# 14-4104 (L)

14-3589 (Con); 14-3607 (Con); 14-4129 (Con); 14-4130 (Con); 14-4131 (Con);
14-4132 (Con); 14-4135 (Con); 14-4136 (Con); 14-4137 (Con); 14-4138 (Con); 14-4139 (Con)

_____

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
_____

SAKWE BALINTULO, as personal representative of SABA
BALINTULO, et al.,

PLAINTIFFS-APPELLANTS,

v.

FORD MOTOR CO., INTERNATIONAL BUSINESS MACHINES
CORP.,

DEFENDANTS-MOVANTS,

(Caption continues on following pages)

_____

### BRIEF OF *AMICI CURIAE* INTERNATIONAL LAW SCHOLARS IN SUPPORT OF PLAINTIFFS-APPELLANTS SUPPORTING REVERSAL

_____

On Appeal from the U.S. District Court for the Southern District of New York
_____

Jonathan Romberg*
Jonathan Hafetz
Seton Hall Law School
Center for Social Justice
833 McCarter Hwy.
Newark, NJ 07102
(973) 642-8700
*Counsel of Record

William J. Aceves
California Western School of Law
225 Cedar Street
San Diego, CA 92101
(619) 515-1589

Counsel for *Amici Curiae*

GENERAL MOTORS CORP.,

DEFENDANT.

_____

Lungisile Ntsebeza, Dorothy Molefi, Tozamile Botha, Mncekeleli Henyn Simangenloko, Samuel Zoyislile Mali, Msitheli Wellington Nonyukela, Mpumelelo Cilibe, William Daniel Peters, James Michael Tamboer, Nonkululeko Sylvia Ngcaka, individually and on behalf of her deceased son, Nothini Betty Dyonashe, individually and on behalf of her deceased son, Mirriam Mzamo, individually and on behalf of her deceased son, Lesiba Kekana, Dennis Vincent Frederi Brutus, Mark Fransch, Elsie Gishi, Thobile Sikani, Reuben Mphela, Catherine Mlangeni, Archington Madondo, Michael Mbele, Thulani Nunu, Mamosadi Mlangeni, Thandiwe Shezi, Sakwe Balintulo,

PLAINTIFFS-APPELLANTS,

Sigqibo Mpendulo, Nyameka Goniwe, Themba Mequbela, Andile Mfingwana, F. J. Dlevu, unlawfully detained and tortured during period 1964/4, Lwazi Pumelea Kubukeli, unlawfully forced to flee into exile in 1985, Frank Brown, P.J. Olai, Sylvia Brown, H. Durham, M.D., Wellington Baninzi Gamagu, Violations of Pass Laws, unlawful detention 19811983, torture subjected to discriminatory labor practices 1981, Hermina Digwamaje, Sakwe Balintulo Khulumani,

PLAINTIFFS,

Hans Langford Phiri,

ADR PROVIDER- APPELLANT,

v.

Suzler AG, Daimler Chrysler North America Holding Corporation, Debeers Corporation, Schindler Holding AG, Novartis AG, Anglo-American Corporation, Banque Indo Suez, Credit Iyonnais, and Unknown officers and directors of Danu International., Standard Chartered Bank PLC, Citigroup AG, J.P. Morgan Securities Inc., as successor to Morgan Guaranty, Manufactures Hannover, Chemical Bank & Chase Manhattan Bank, Corporate Does, Commerzbank AG, Credit Suisse, Citigroup Inc., Deutsche Bank AG, UBS AG, Dresdner Bank AG, Unisys Corporation, Sperry Corporation, Burroughs Corporation, ICL, Ltd., John Doe Corporation, Amdahl Corp., Computer Companies, Ford Motor Company, Ford Motor Company, Holcin, Ltd., Henry Blodget, Merrill Lynch & Co., Inc.,

Kirsten Campbell, Kenneth M. Seymour, Justin Baldauf, Thomas Mazzucco, Virginia Syer Genereux, Sofia Ghachem, John Doe, Defendants 1 through 10, Edward McCabe, Deepak Raj, Corporate Does, 1-100, their predecessors, successors and/or assigns, Oerlikon Contraves AG, Exxon Mobil Corporation, Oerlikon Buhrle AG, Shell Oil Company, Shell Petroleum, Inc., Royal Dutch Petroleum Co., Shell Transport & Trading Company, PLC, National Westminster Bank PLC, Minnesota Mining and Manufacturing Company/3M Company, Fujitsu Ltd., Barclays National Bank Ltd., Daimler AG, General Motors Corporation, International Business Machines Corporation, Union Bank of Switzerland AG,

DEFENDANTS-APPELLEES,

Rheinmatall Group AG, Barclays Bank PLC,

DEFENDANTS.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.......................................................................................i

TABLE OF AUTHORITIES ............................................................. ii

INTEREST OF *AMICI CURIAE* ......................................................1

SUMMARY OF ARGUMENT ...............................................................3

ARGUMENT ..........................................................................................5

     I.      UNDER INTERNATIONAL LAW, AIDING AND
             ABETTING IS A DISTINCT AND DIRECT THEORY OF
             LIABILTY...........................................................................................5

     II.     IN THIS CASE, THE DEFENDANTS' AIDING AND
             ABETTING OCCURRED IN THE UNITED STATES,
             THEREBY MEETING THE TOUCH AND CONCERN
             STANDARD SET FORTH IN *KIOBEL*.............................................14

CONCLUSION ......................................................................................19

CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)(C).......................20

# <u>TABLE OF AUTHORITIES</u>

***Federal Cases***

*Al Shimari v. CACI Premier Technology, Inc.*,
    758 F.3d 516 (4th Cir. 2014) ............................................................17

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013) ........................................................3, 16

*In re S. Afr. Apartheid Litig.*,
    2014 WL 4290444 (S.D.N.Y. Aug. 28, 2014)....................................3, 4, 15, 16

*Khulumani v. Barclay Nat'l Bank Ltd.*,
    504 F.3d 254 (2d Cir. 2007) ..............................................................7

*Kiobel v. Royal Dutch Petroleum* Co.,
    133 S.Ct. 1659 (2013)................................................................*passim*

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014) ............................................................16

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    582 F.3d 244 (2d Cir. 2009) ..............................................................6


***Federal Statutes***

Fed. R. App. P. 29 ..................................................................................1

28 U.S.C. §1350..............................................................................*passim*


***International Cases***

*Prosecutor v. Aleksovski*,
    Case No. IT-95-14/1-A, Appeals Judgment (Int'l Crim. Trib. for
    the Former Yugoslavia Mar. 24, 2000) ............................................10

*Prosecutor v. Blagojević & Jokić*,
  Case No. IT-02-60-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia May 9, 2007)................................................10

*Prosecutor v. Blaškić*,
  Case No. IT-95-14-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia July 29, 2004) ........................................ 12-13

*Prosecutor v. Brima,*
  Case No. SCSL-04-16-T, Trial Judgment (Sp. Ct. for
  Sierra Leone June 20, 2007) ..............................................13

*Prosecutor v. Delalić,*
  Case No. IT-96-21-T, Trial Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia Nov. 16, 1998) ................................9

*Prosecutor v. Perišić*,
  Case No. IT-04-81-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia Feb. 28, 2013) ................................13

*Prosecutor v. Popović*,
  Case No. IT-05-88-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia Jan. 30, 2015)................................8

*Prosecutor v Simić*,
  Case No. IT-95-9-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia Nov. 28, 2006) ................................8

*Prosecutor v. Tadic*,
  Case No. IT-94-1-A, Appeals Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia July 15, 1999) ..........................................6, 10

*Prosecutor v. Tadic*,
  Case No. IT-94-1-T, Trial Judgment (Int'l Crim. Trib. for
  the Former Yugoslavia May 7, 1997)................................12

*Prosecutor v. Taylor,*
  SCSL-03-01-A, Appeals Judgment (Sp. Ct. for Sierra Leone
  Sept. 26, 2013) ............................................ 11-12

*Trial of Bruno Tesch and Two Others*,
 *1 Law Reports of Trials of War Criminals* 93
 (William S. Hein & Co., Inc. 1997) (1946) .................................................. 13-14

*United States v. Flick*,
 6 Trials of War Criminals Before the Nuremberg Military Tribunals Under
 Control Council Law No. 10 (1952) ..................................................................6

*United States v. Goering, et al.*,
 International Military Tribunal, Oct. 1, 1946, Nazi Conspiracy
 and Aggression: Opinion and Judgment (1947) ...................................................5

*United States v. Krauch*,
 8 Trials of War Criminals Before the Nuremberg Military Tribunals Under
 Control Council Law No. 10 (1952) ..................................................................6

### *International Authorities*

Agreement for the Prosecution and Punishment of Major War Criminals of
 the European Axis, and Establishing the Charter of the International
 Military Tribunal, 82 U.N.T.S. 279 (Aug. 8, 1945) ...........................................8

Control Council Law No. 10, Punishment of Persons Guilty of War Crimes,
 Crimes Against Peace and Against Humanity, Dec. 20, 1945, 3 Official
 Gazette Control Council for Germany (1946) .....................................................8

Rome Statute of the International Criminal Court,
 2187 U.N.T.S. 90 (July 17, 1998) .....................................................................9

Statute of the International Criminal Tribunal for the Former Yugoslavia,
 U.N. Doc. S/RES/827 (May 25, 1993) ..............................................................8

Statute of the International Criminal Tribunal for Rwanda,
 U.N. Doc. S/RES/955 (Nov. 8, 1994) ................................................................9

***Miscellaneous Authorities***

Steven Ratner, Corporations and Human Rights: A Theory of Legal
    Responsibility,
    111 Yale L.J. 443 2001 .......................................................................6

Elies van Sliedregt, Individual Criminal Responsibility in International Law
    (2012) ............................................................................................5, 6

Neha Jain, Perpetrators and Accessories in International Criminal Law .................5

Flavio Noto, Secondary Liability in International Criminal Law (2013)..................5

## INTEREST OF *AMICI CURIAE*

This Brief of *Amici Curiae* International Law Scholars is respectfully submitted pursuant to Federal Rule of Appellate Procedure 29 and Local Rule 29.1.[1]  It is filed in support of Plaintiffs-Appellants and seeks reversal of the district court's decision.  All parties have consented to the participation of *Amici* in this case.

*Amici* are legal experts in the fields of international law and human rights: **M. Cherif Bassiouni,** Emeritus Professor of Law, DePaul University School of Law; **Douglass Cassel,** Professor of Law and Notre Dame Presidential Fellow, Notre Dame Law School; **Bert Lockwood,** Distinguished Service Professor, University of Cincinnati College of Law; **Naomi Roht-Arriaza,** Distinguished Professor of Law, University of California, Hastings College of the Law; and **Ralph Steinhardt,** Professor Law and Arthur Selwyn Miller Research Professor of Law, The George Washington University Law School.[2]  While they pursue a wide variety of legal interests, they all share a deep commitment to the rule of law and respect for human rights.  *Amici* believe the district court erred in its analysis regarding aiding and abetting and in its finding that the Plaintiffs' claims do not

---

[1] No party or party's counsel authored this Brief in whole or in part.  No party or party's counsel contributed money that funded the preparation or submission of this Brief.  No person other than *Amici* and their counsel contributed money that funded the preparation and submission of this Brief.

[2] Affiliations are provided for identification purposes only.

"touch and concern" the United States, which is the standard for Alien Tort Statute (ATS) liability set forth by the U.S. Supreme Court in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013). The district court's decision is contrary to Supreme Court precedent, this Court's precedent, and fundamental principles of international law. Accordingly, *Amici* would like to provide the Court with an additional perspective on these issues. They believe this submission will assist the Court in its deliberations.

# SUMMARY OF ARGUMENT

This case arises out of the horrific and systematic abuses perpetrated during the apartheid era in South Africa. Crimes against humanity, extrajudicial killing, torture, and other serious human rights abuses were committed on a massive scale. Integral to the success of the apartheid regime was the support of U.S. corporations. The Plaintiffs allege that both the Ford Motor Company and International Business Machines Corporation, acting from the United States, aided and abetted the commission of serious human rights abuses in South Africa by purposefully offering extensive support to the regime, including the provision of military vehicles and computer equipment to the South African military.

In its August 28, 2014 opinion, the district court found that the relevant conduct alleged by the Plaintiffs "all occurred abroad." *In re South African Apartheid Litigation*, Nos. 02 MDL 1499(SAS), 02 Civ. 4712(SAS), 02 Civ. 6218(SAS), 03 Civ. 1024(SAS), 03 Civ. 4524(SAS), 2014 WL 4290444, at *6 (S.D.N.Y. Aug. 28, 2014). The district court found that the Plaintiffs were at most alleging that the Defendants' actions gave rise to vicarious liability, a theory that had already been rejected by this Court in *Balintulo v. Daimler AG*, 727 F.3d 174, 192 (2d Cir. 2013). Therefore, the district court held that "the claims do not touch and concern the territory of the United States 'with sufficient force to displace the presumption against extraterritorial application . . . .'" *In re South African*

3

*Apartheid Litigation*, 2014 WL 4290444, at *6 (quoting *Kiobel*, 133 S. Ct. at 1669).

In so holding, the district court committed reversible error by failing to conduct the proper analysis for determining aiding and abetting liability under international law and under the ATS. The court did not consider the Plaintiffs' proposed amendments clarifying the assertion of aiding and abetting claims, rather than merely the vicarious liability claims that had been rejected by this Court.

As a result, the district court did not consider the actual conduct alleged by the Plaintiffs to give rise to ATS liability—conduct occurring in the United States that aided and abetted the human rights abuses that took place outside the United States. Under international law, aiding and abetting is a direct theory of liability, one that requires a predicate crime, but that is legally distinct violation of the law of nations from the predicate crime.

While the predicate crimes in this case occurred in South Africa, the Defendants' aiding and abetting occurred in the United States, thereby constituting a violation of the law of nations, actionable under the ATS, meeting the "touch and concern" requirement set forth in *Kiobel* and in this Court's precedent. To hold otherwise would facilitate human rights abuses by allowing perpetrators to "outsource" abuses. *Kiobel*'s "touch and concern" analysis should not be interpreted to permit such conduct.

## **ARGUMENT**

## I. **UNDER INTERNATIONAL LAW, AIDING AND ABETTING IS A DISTINCT AND DIRECT THEORY OF LIABILTY.**

From the Nuremberg tribunals to the recent case law of international criminal tribunals, it is well-established that a wide range of conduct may give rise to liability under international law, including not only committing a crime, but also planning, ordering, or aiding and abetting in the execution of that predicate crime. *See generally* Neha Jain, *Perpetrators and Accessories in International Criminal Law* (2014); Flavio Noto, *Secondary Liability in International Criminal Law* (2013); Elies van Sliedregt, *Individual Criminal Responsibility in International Law* (2012). Recognizing these various forms of liability is essential to the enforcement of international law because it ensures that those individuals who facilitate the commission of a crime are held accountable for their actions. This basic principle of international criminal law was recognized by the International Military Tribunal at Nuremberg:

> Hitler could not make aggressive war by himself. He had to have the co-operation of statesmen, military leaders, diplomats and businessmen. When they, with knowledge of his aims, gave him their co-operation, they made themselves parties to the plan he had initiated. They are not to be deemed innocent because Hitler made use of them, if they knew what they were doing.

*United States v. Goering, et al.*, International Military Tribunal, Oct. 1, 1946, Nazi Conspiracy and Aggression: Opinion and Judgment 223 (1947). More recently,

the International Criminal Tribunal for the Former Yugoslavia (ICTY) echoed these views:

> Although only some members of the group may physically perpetrate the criminal act (murder, extermination, wanton destruction of cities, towns or village, etc.), the participation and contribution of the other members of the group is often vital in facilitating the commission of the offence in question. It follows that the moral gravity of such participation is often no less–or indeed no different–from that of those actually carrying out the acts in question.

*Prosecutor v. Tadic*, Case No. IT-94-1-A, Appeals Judgment, ¶ 191 (Int'l Crim. Trib. for the Former Yugoslavia July 15, 1999). This obligation to refrain from assisting the commission of international wrongs applies to all members of society, including private individuals, government officials, and corporations.[3]

Aiding and abetting is recognized as one of several distinct and direct theories of liability under international law.[4] *Presbyterian Church of Sudan v.*

---

[3] Several decisions issued by the Nuremberg tribunals after World War II addressed the liability of corporate officials for human rights abuses. These cases emphasized that corporate structure could not be used to remove liability for human rights abuses, including the aiding and abetting of such acts. *See, e.g.*, *United States v. Krauch*, 8 Trials of War Criminals Before the Nuremberg Military Tribunals Under Control Council Law No. 10, at 1081 (1952); *United States v. Flick*, 6 Trials of War Criminals Before the Nuremberg Military Tribunals Under Control Council Law No. 10, at 1202 (1952). "Although in all these cases the courts were trying individuals, they nonetheless routinely spoke in terms of corporate responsibilities and obligations." Steven Ratner, *Corporations and Human Rights: A Theory of Legal Responsibility*, 111 Yale L.J. 443, 477 (2001).

[4] Aiding and abetting, in fact, encompasses two distinct activities. "Aiding means 'giving assistance to someone' and abetting involves 'facilitating the commission of a crime by being sympathetic thereto.' While the terms thus refer to two

*Talisman Energy, Inc*., 582 F.3d 244, 259 (2d Cir. 2009); *Khulumani v. Barclay Nat'l Bank Ltd*., 504 F.3d 254, 277 (2d Cir. 2007) (Katzmann, J., concurring). Establishing liability for aiding and abetting requires a two-step process under international law—and, for the grave violation of the law of nations at issue here, under the ATS.

First, a predicate crime that violates international law must be identified. Examples of such crimes include genocide, war crimes, crimes against humanity, apartheid, slavery, torture, extrajudicial killing, and cruel, inhuman, or degrading treatment. Second, acts that constitute aiding and abetting of the predicate crime must then be identified. These acts must meet the *actus reus* and *mens rea* requirements for aiding and abetting. In a January 30, 2015 decision, the ICTY reaffirmed the *actus reus* and *mens rea* elements for aiding and abetting.

> The Appeals Chamber recalls that the actus reus for aiding and abetting "consists of practical assistance, encouragement, or moral support which has a substantial effect on the perpetration of the crime" and the mens rea requires "knowledge that these acts assist the commission of the offense." The mens rea also requires that the aider and abettor was aware of the essential elements of the crime which was ultimately committed, including the intent of the principal perpetrator. It is not necessary that the aider and abettor know the precise crime that was intended and was in fact committed–if he is aware that one of a number of crimes will probably be committed, and one of those crimes is committed, he has intended to facilitate the commission of that crime, and is guilty as an aider and abettor.

discrete activities, in practice they are charged in tandem." van Sliedregt, *supra*, at 120.

*Prosecutor v. Popović*, Case No. IT-05-88-A, Appeals Judgment, ¶ 1732 (Int'l Crim. Trib. for the Former Yugoslavia Jan. 30, 2015) (citations omitted); *see also Prosecutor v Simić*, Case No. IT-95-9-A, Appeals Judgment, ¶ 85 (Int'l Crim. Trib. for the Former Yugoslavia Nov. 28, 2006).

This two-step process for establishing aiding and abetting is evident throughout the international jurisprudence on aiding and abetting liability.  For example, Allied Control Council Law No. 10, which was established to prosecute German war criminals after the Second World War, recognized criminal liability for individuals who committed war crimes, crimes against humanity, and crimes against peace and for those who aided and abetted in such crimes.[5]   Control Council Law No. 10, Punishment of Persons Guilty of War Crimes, Crimes Against Peace and Against Humanity, art. II(1) Dec. 20, 1945, 3 Official Gazette Control Council for Germany 50-55 (1946).  Article II(2) then provides that:

> Any person without regard to nationality or the capacity in which he acted, is deemed to have committed a crime as defined in paragraph 1 of this Article, if he was (a) a principal or (b) was an accessory to the commission of such crime or ordered or abetted the same or (c) took a consenting part therein or (d) was connected with plans or enterprises involving its commission . . . .

---

[5] *See also* Agreement for the Prosecution and Punishment of Major War Criminals of the European Axis, and Establishing the Charter of the International Military Tribunal, art. 6, Aug. 8, 1945, 82 U.N.T.S. 279 ("Leaders, organizers, instigators and accomplices participating in the formulation or execution of a common plan or conspiracy to commit any of the foregoing crimes are responsible for all acts performed by any persons in execution of such plan.").

More recently, the Statute of the International Criminal Tribunal for the Former Yugoslavia established criminal liability for genocide, crimes against humanity, grave breaches of the 1949 Geneva Conventions, and violations of the laws or customs of war. Statute of the International Criminal Tribunal for the Former Yugoslavia, arts. 2-5, May 25, 1993, U.N. Doc. S/RES/827. Article 7(1) of the ICTY Statute then added that "[a] person who planned, instigated, ordered, committed or otherwise aided and abetted in the planning, preparation or execution of a crime referred to in articles 2 to 5 of the present Statute, shall be individually responsible for the crime."[6] According to the ICTY, "[t]he principles of individual criminal responsibility enshrined in Article 7, paragraph 1, of the Statute reflect the basic understanding that individual criminal responsibility for the offences under the jurisdiction of the International Tribunal is not limited to persons who directly commit the crimes in question." *Prosecutor v. Delalić*, Case No. IT-96-21-T, Trial Judgment, ¶ 319 (Int'l Crim. Trib. for the Former Yugoslavia Nov. 16, 1998). Liability extends to those individuals who aid and abet the crimes within the ICTY's jurisdiction.[7]

---

[6] The Statute of the International Criminal Tribunal for Rwanda contains a similar description of individual criminal responsibility. Statute of the International Criminal Tribunal for Rwanda, art. 6(1), Nov. 8, 1994, U.N. Doc. S/RES/955.

[7] The Rome Statute of the International Criminal Court offers a more detailed description of international criminal responsibility. Rome Statute of the International Criminal Court, art. 25, July 17, 1998, 2187 U.N.T.S. 90.

The ICTY has thus found that the aider and abettor is not liable for the crime committed by the direct perpetrator, but rather is liable for facilitating it, which itself is a separate crime. In *Prosecutor v. Blagojević & Jokić*, Case No. IT-02-60-A, Appeals Judgment, ¶ 192 (Int'l Crim. Trib. for the Former Yugoslavia May 9, 2007), for example, the Appeals Chamber noted that "Article 7(1) of the Statute deals not only with individual responsibility by way of direct or personal participation in the criminal act but also with individual participation by way of aiding and abetting in the criminal acts of others." *See also Prosecutor v. Tadic*, Case No. IT-94-1-A, at ¶ 229 ("The aider and abettor is always an accessory to a crime perpetrated by another person, the principal."). Because of the requisite nexus between the predicate crime and aiding and abetting, an aider and abettor cannot be held criminally liable if the predicate crime is not committed, but the aiding and abetting of an existent predicate crime is a distinct criminal act. *See, e.g.*, *Prosecutor v. Aleksovski*, Case No. IT-95-14/1-A, Appeals Judgment, ¶ 165 (Int'l Crim. Trib. for the Former Yugoslavia Mar. 24, 2000) ("The Prosecution must, of course, establish the acts of the principal or principals for which it seeks to make the aider and abettor responsible.").

Building on the case law of the international criminal tribunals, the Special Court for Sierra Leone offers a detailed summary of aiding and abetting liability under international law. Its analysis offers a clear distinction between the predicate

crime that violates international law and the acts that constitute aiding and abetting. In *Prosecutor v. Taylor*, SCSL-03-01-A, Appeals Judgment, ¶ 369 (Sp. Ct. for Sierra Leone Sept. 26, 2013) (citations omitted), the Special Court offered several examples of predicate crimes.

> Aiding and abetting liability has attached to those who have provided assistance, encouragement or moral support to a variety of different crimes in a variety of contexts. Confirmed convictions for aiding and abetting liability have been entered for: the rape of a single victim; attacks on peacekeepers; detention, ill-treatment and forcible transfer throughout a municipality; killings, torture, destruction of homes and religious institutions and persecution in a region; persecution throughout a State; a genocide.

The Special Court then offered examples of aiding and abetting in support of the predicate crimes.

> The acts and conduct of those convicted had a substantial effect on the commission of crimes in an infinite variety of ways. An accused's acts and conduct can have a substantial effect by providing weapons and ammunition, vehicles and fuel or personnel, or by standing guard, transporting perpetrators to the crime site, establishing roadblocks, escorting victims to crime sites or falsely encouraging victims to seek refuge at an execution site. Such variety also includes providing financial support to an organisation committing crimes, expelling tenants, dismissing employees, denying victims refuge or identifying a victim as a member of the targeted group. Senior officials' acts and conduct can have a substantial effect on the commission of crimes by signing decrees, attending meetings and issuing reports, allowing troops to be used to assist and commit crimes, demanding slave labour to satisfy the needs of industries, issuing directives and drafting laws, endorsing official decisions to disarm victim groups, working together with the police, army and paramilitaries to maintain a system of unlawful arrests and detention, or deliberately not providing adequate medical care to detention facilities.

*Id*. at ¶ 369 (citations omitted).

Moreover,

> [i]n other cases, the acts or conduct of accused persons found to have had a substantial effect on crimes include making a speech to a crowd of listeners encouraging them to commit crimes, implementing a media campaign to arouse hatred against a group or being an approving spectator at the scene of a crime, or by burying bodies, cremating bodies or conserving looted property. The acts and conduct of an accountant, architect or dentist in their respective professional roles can have a substantial effect on the commission of crimes, as can those of prosecutors, judges and religious officials.

*Id*.

Because aiding and abetting gives rise to distinct criminal liability, courts have found no geographic proximity requirement for establishing aiding and abetting under international law. In other words, aiding and abetting activities can be committed anywhere (as long as they meet the *actus reus* and *mens rea* requirements). For example, the ICTY has consistently stated that the conduct of the aider and abettor need not be geographically proximate to the predicate crime. *See Prosecutor v. Tadic*, Case No. IT-94-1-T, Trial Judgment, ¶ 679 (Int'l Crim. Trib. for the Former Yugoslavia May 7, 1997) ("That participation in the commission of the crime does not require an actual physical presence or physical assistance appears to have been well accepted at the Nürnberg war crimes trials, as was the concept that mere presence at the scene of the crime without intent is not enough.") (citation omitted); *see also Prosecutor v. Blaškić*, Case No. IT-95-14-A,

Appeals Judgment, ¶ 48 (Int'l Crim. Trib. for the Former Yugoslavia July 29, 2004) ("[T]he Appeals Chamber . . . further agrees that the *actus reus* of aiding and abetting a crime may occur before, during, or after the principal crime has been perpetrated, and that the location at which the *actus reus* takes place may be removed from the location of the principal crime."); *Prosecutor v. Perišić*, Case No. IT-04-81-A, Appeals Judgment, ¶ 39 (Int'l Crim. Trib. for the Former Yugoslavia Feb. 28, 2013).

The Special Court for Sierra Leone has made similar findings. *Prosecutor v. Brima*, Case No. SCSL-04-16-T, Trial Judgment, ¶ 775 (Sp. Ct. for Sierra Leone June 20, 2007) ("'Aiding and abetting' may be constituted by contribution to the planning, preparation or execution of a finally completed crime. Such contribution may be provided directly or through an intermediary and irrespective of whether the participant was present or removed both in time and place from the actual commission of the crime.") (citations omitted). While geographic proximity to the predicate crime may inform the *actus reus* analysis for aiding and abetting, it is certainly not required. Given the nature of aiding and abetting liability, the absence of a geographic proximity requirement is not surprising.[8]

---

[8] The *Zyklon B* case is illustrative of the lack of a geographic proximity requirement for aiding and abetting. A British Military Court convicted defendants of aiding and abetting war crimes by selling poison gas to Nazi Germany, which was then used in concentration camps to kill innocent civilians. While the corporate entity, Tesch and Stabenow, was located in Germany, the poison gas was

13

In sum, aiding and abetting is a distinct theory of liability under international law. Establishing liability for aiding and abetting requires a two-step process. First, a predicate crime that violates international law must be identified. Second, acts that constitute aiding and abetting of the predicate crime must then be identified.

## II. IN THIS CASE, THE DEFENDANTS' AIDING AND ABETTING OCCURRED IN THE UNITED STATES, THEREBY MEETING THE TOUCH AND CONCERN STANDARD SET FORTH IN *KIOBEL*.

During the apartheid era, the South African government implemented a campaign of systematic repression against the non-white population. Crimes against humanity, extrajudicial killing, and torture were perpetrated on a massive scale. The Plaintiffs allege that the Defendants aided and abetted these human rights abuses by providing extensive support to the South African regime, including the provision of military vehicles and computer equipment to the South African military. Significantly, the Plaintiffs allege that the decisions to undertake these actions were made in the United States:

> "[A]t all relevant times, the code of business conduct, standards, and values for IBM directors, executive officers, and employees globally were set by IBM in the United States."

transported hundreds of miles away for use in concentration camps, including Auschwitz/Birkenau. *The Zyklon B Case (Trial of Bruno Tesch and Two Others)*, I Law Reports of Trials of War Criminals 93 (1947).

14

"IBM in the United States made key decisions about operations in South Africa, including investments, policy, management, bids and contracts, hardware and software products and customization, as well as services and maintenance."

"IBM did not have research and development or manufacturing facilities in South Africa. Rather, IBM, in the United States, conducted the research and development for the hardware and software that supported the apartheid systems."

Plaintiffs allege that Ford made "key decisions about investments, policy, and operations in South Africa" in the United States, even after "the tightening of U.S. trade sanctions in February 1978."

"Ford's U.S. headquarters controlled its major global policies, which applied to South Africa, including employment policies, ethical business policies, and codes of conduct."

*In re South African Apartheid Litigation*, 2014 WL 4290444, at *2-*3 (citations omitted).

In its August 28, 2014 opinion, the district court found that this conduct "all occurred abroad." *Id*. at *6. It therefore held that "the claims do not touch and concern the territory of the United States 'with sufficient force to displace the presumption against extraterritorial application . . . .'" *Id*. at *6 (quoting *Kiobel*, 133 S. Ct. at 1669).

This was error. The district court failed to conduct the proper analysis for determining aiding and abetting liability under international law and thus under the ATS. As a result, it did not consider the actual conduct alleged by the Plaintiffs to have occurred in the United States that aided and abetted the human rights crimes

15

that took place outside the United States.[9]  While the predicate crimes occurred in South Africa, the Defendants' aiding and abetting occurred in the United States, thereby meeting the "touch and concern" requirement set forth in *Kiobel* and this Court's precedent.  Indeed, the Plaintiffs have alleged far more contacts with the United States than the mere corporate presence the Supreme Court found insufficient in *Kiobel*.

As this Court recognized in *Balintulo*, 727 F.3d at 192, and *Mastafa v. Chevron Corp.*, 770 F.3d 170, 189 (2d Cir. 2014), courts must determine whether the actions alleged to give rise to ATS liability—here, aiding and abetting the predicate crimes occurring in South Africa—"touch and concern" the United States.  In both these cases, the Second Circuit emphasized the importance of considering the appropriate theory of liability and the manner in which the alleged acts "touch and concern" the United States.  In *Mastafa*, this Court affirmed that aiding and abetting is a distinct, recognized theory of liability under the ATS. *Mastafa*, 770 F.3d at 181.  In its analysis, however, the district court failed to

---

[9] The district court's error is evidenced by its conflation of the Plaintiffs' aiding and abetting claims with a claim of vicarious liability.  *In re South African Apartheid Litigation*, 2014 WL 4290444, at *5.  These are, in fact, fundamentally theories of liability, and this Court's rejection of the latter in *Balintulo* highlights the distinction between a derivative claim of vicarious liability, which cannot proceed under the ATS if the predicate claim is extraterritorial, as opposed to an independent aiding and abetting claim, which is actionable if the conduct underlying that claim sufficiently touches and concerns the United States.

consider the Plaintiffs' theory of liability—aiding and abetting—and the extent to which the Defendants' actions alleged to give rise to liability "touch and concern" the United States.

The Second Circuit's approach to the *Kiobel* standard is consistent with the law of other circuits. In *Al Shimari v. CACI Premier Technology, Inc*., 758 F.3d 516 (4th Cir. 2014), for example, the Fourth Circuit considered whether a U.S. corporation was liable for aiding and abetting human rights abuses perpetrated in Iraq. At the outset, the Fourth Circuit distinguished between the predicate crimes that occurred in Iraq and the aiding and abetting that occurred in the United States. In determining whether the plaintiffs' claims "touch and concern" the United States, the Fourth Circuit considered five separate points of contact between the plaintiffs' claims and the United States, including facts in the record showing that the defendant's contract to perform interrogation services in Iraq was issued in the United States, and that the defendant's managers in the United States gave tacit approval to the acts of torture committed by the defendant in Iraq.[10] *Id*. at 530-31. Applying this fact-based inquiry, the Fourth Circuit held that the "plaintiffs' claims 'touch and concern' the territory of the United States with sufficient force to displace the presumption against extraterritorial application of the Alien Tort

_____

[10] The Fourth Circuit also considered the defendant's status as a U.S. corporation, the U.S. citizenship of the defendant's employees, and the expressed intent of Congress to hold U.S. citizens accountable for torture, factors also relevant here. *Al Shimari*, 758 F.3d at 530-531.

Statute." *Id*. at 520.

In this case, the Defendants' alleged aiding and abetting—a non-derivative, direct and distinct violation of the law of nations—took place in the United States, thereby readily fulfilling the "touch and concern" requirement set forth by the Supreme Court in *Kiobel*. To hold otherwise would facilitate human rights abuses by allowing perpetrators to "outsource" abuses and use their location in the United States as a safe haven from accountability, directly contrary to the intent of the drafters of the ATS. *Kiobel*'s "touch and concern" analysis should not be interpreted to permit such conduct.

## <u>CONCLUSION</u>

For the foregoing reasons, *Amici* respectfully request that this Court reverse the district court's ruling.

Respectfully submitted,


By:   <u>/s/ Jonathan Romberg</u>

Jonathan Romberg
Jonathan Hafetz
Seton Hall Law School
Center for Social Justice[11]
Newark, NJ 07102
(973) 642-8700


William J. Aceves
California Western School of Law
225 Cedar Street
San Diego, CA  92101
(619) 515-15893

Counsel for *Amici Curiae*


February 4, 2015

---

[11] The Center for Social Justice wishes to thank the students enrolled in the Impact Litigation Clinic for assistance in preparing this Brief.

19

## **CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)(C)**

I hereby certify, pursuant to Fed. R. App. P. 32(a)(7)(C), that the foregoing Brief contains 4,384 words.

Dated:      February 4, 2015      By:   /s/ Jonathan Romberg
                                                Jonathan Romberg