# No. 14-4104

## *United States Court Of Appeals*

## *for the Second Circuit*

_____

Sakwe Balintulo, as personal representative of SABA BALINTULO, et al.

Plaintiff-Appellants

v.

*(For Continuation of Caption See Following Page)*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**CORRECTED BRIEF OF *AMICI CURIAE* HUMAN RIGHTS AND LABOR
ORGANIZATIONS IN SUPPORT OF PLAINTIFFS-APPELLANTS**

Accountability Counsel, Center for Constitutional Rights, EarthRights
International, Human Rights Law Foundation, International Rights Advocates,
Service Employees International Union, *Amici Curiae*

Richard L. Herz
EarthRights International
1612 K Street, N.W. Suite 401
Washington, DC 20006
202-466-5188 (ph); 202-466-5189 (fax)
*Attorneys for Amici Curiae*

FORD MOTOR CO., INTERNATIONAL BUSINESS MACHINES CORP.

Defendants- Movants,

GENERAL MOTORS CORP.

Defendant.

Lungisile Ntsebeza, Dorothy Molefi, Tozamile Botha, Mncekeleli Henyn
Simangenloko, Samuel Zoyislile Mali, Msitheli Wellington Nonyukela, Mpumelelo
Cilibe, William Daniel Peters, James Michael Tamboer, Nonkululeko Sylvia
Ngcaka, individually and on behalf of her deceased son, Nothini Betty Dyonashe,
individually and on behalf of her deceased son, Mirriam Mzamo, individually and
on behalf of her deceased son, Lesiba Kekana, Dennis Vincent Frederi Brutus, Mark
Fransch, Elsie Gishi, Thobile Sikani, Reuben Mphela, Catherine Mlangeni,
Archington Madondo, Michael Mbele, Thulani Nunu, Mamosadi Mlangeni,
Thandiwe Shezi, Sakwe Balintulo,

Plaintiffs-Appellants

Sigqibo Mpendulo, Nyameka Goniwe, Themba Mequbela, Andile Mfingwana, F. J.
Dlevu,unlawfully detained and tortured during period 1964/4, Lwazi Pumelea
Kubukeli, unlawfully forced to flee into exile in 1985, Frank Brown, P.J. Olai,
Sylvia Brown, H. Durham, M.D., Wellington Baninzi Gamagu, Violations of Pass
Laws, unlawful detention 198119983, torture subjected to discriminatory labor
practices 1981, Hermina Digwamaje, Sakwe Balintulo Khulumani,

Plaintiffs,

Hans Langford Phiri,

ADR Provider- Appellant,

v.

Suzler AG, Daimler Chrysler North America Holding Corporation, Debeers
Corporation, Schindler Holding AG, Novartis AG, Anglos-American Corporation,
Banque Indo Suez, Credit Iyonnais, and Unknown officers and directors of Danu
International., Standard Chartered Bank PLC, Citigroup AG, J.P. Morgan

Securities Inc., as successor to Morgan Guaranty, Manufactures Hannover, Chemical Bank & Chase Manhattan Bank, Corporate Does, Commerzbank AG, Credit Suisse, Citigroup Inc., Deutsche Bank AG, UBS AG, Dresdner Bank AG, Unisys Corporation, Sperry Corporation, Burrough Corrporation, ICL, Ltd., John Doe Corporation, Amdahl Corp., Computer Companies, Ford Motor Company, Ford Motor Company, Holcin, Ltd., Henry Blodget, Merrill Lynch & Co., Inc., Kirsetn Campbell, Kenneth M. Seymour, Justin Baldauf, Thomas Mazzucco, Virginia Syer Genereux, Sofia Ghachem, John Doe, Defendants 1through 10, Edward McCabe, Deepak Raj, Corporate Does, 1-100, their predecessors, successors and/or assigns, Oerlikon Contraves AG, Exxon Mobil Corporation, Oerlikon Buhrle AG, Shell Oil Company, Shell Petroleum, Inc., Royal Dutch Petroleum Co., Shell Transport & Trading Company, PLC, National Westminster Bank PLC, Minnesota Mining and Manufacturing Company/ 3M Company, Fujitsu Ltd., Barclays National Bank Ltd., Daimler AG, General Motors Corporation, International Business Machines Corporation, Union Bank of Switzerland AG,

Defendants-Appellees,

Rheinmatall Group AG, Barclays Bank PLC,

Defendants.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT............................................iii

TABLE OF AUTHORITIES ..................................................iv

STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE....1

STATEMENT OF THE ISSUE ADDRESSED BY AMICUS CURIAE ...1

INTRODUCTION AND SUMMARY OF ARGUMENT...........................2

ARGUMENT .......................................................6

I.  The Supreme Court's decision in *Kiobel II* accepts that
    corporations can be sued…………………………………………6

II. Federal common law governs the issue of whether corporations
    can be sued under the ATS ..............................................8

   A.  The text of the ATS, Sosa, the ordinary role of federal
       common law and the purpose of the ATS all direct the
       court to federal common law....................................9

      1.  The text of the ATS requires that federal common law
          governs............................................................9

      2.  Sosa directs courts to apply federal common law........10

      3.  Courts generally look to federal liability rules to
          effectuate federal causes of action...............................15

      4.  Congress' original purpose of providing a federal forum
          suggests that who can be sued must be determined by
          common law rules .......................................17

i

B.  International law itself requires the conclusion that federal
    common law applies .............................................................. 19

III.  Federal common law provides for corporate liability ................... 23

A.  The ATS should employ a uniform federal rule based on
    traditional common law principles. ...................................... 24

B.  Under federal common law and international law,
    corporations are subject to the same liability rules as natural
    persons ................................................................................. 27

C.  Corporate liability best effectuates the Framers' purposes in
    passing the ATS .................................................................. 29

CONCLUSION ........................................................................................ 33

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and

29(c)(1), *amici curiae* submit their Corporate Disclosure Statement as

follows: None of the incorporated *amici curiae* has a parent corporation

nor a publicly held corporation that owns 10% or more of its stock.

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Abebe-Jira v. Negewo*,
    72 F.3d 844 (11th Cir. 1996) .................................................... 11, 26

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ........................................................................ 9

*Baltimore & P.R. Co. v. Fifth Baptist Church*,
    108 U.S. 317 (1883) ...................................................................... 27

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964) ...................................................................... 24

*Bowoto v. Chevron Corp.*, No. C 99-02506,
    2006 U.S. Dist. LEXIS 63209 (N.D. Cal. Aug. 22, 2006) .............. 14

*Burlington Indus., Inc., v. Ellerth*,
    524 U.S. 742 (1998) ................................................................. 15, 25

*Cabello v. Fernandez-Larios*,
    402 F.3d 1148 (11th Cir. 2005) ..................................................... 11

*Cmty. Elec. Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*,
    869 F.2d 1235 (9th Cir. 1989). ...................................................... 17

*Connecticut v. Massachusetts*,
    282 U.S. 660 (1931) ...................................................................... 26

*County of Oneida, N.Y. v. Oneida*,
    Indian Nation of New York State, 470 U.S. 226 (1985) ................ 16

*Doe v. Exxon Mobil Corp.*,
    654 F.3d 11 (D.C. Cir. 2011) *vacated on other grounds*,
    527 F. App'x 7 (D.C. Cir. 2013) ..................................................*passim*

iv

*Doe v. Islamic Salvation Front,*
    257 F. Supp. 2d 115 (D.D.C. 2003) ................................................. 11

*Doe v. Nestle USA, Inc.,*
    738 F.3d 1048 (9th Cir. 2013) ...................................................... 2, 4

*Eastman Kodak Co. v. Kavlin,*
    978 F. Supp. 1078 (S.D. Fla. 1997) ............................................. 11

*Filártiga v. Peña-Irala,*
    630 F.2d 876 (2d Cir. 1980) ............................................................. 3

*Filártiga v. Peña-Irala,*
    577 F. Supp. 860 (S.D.N.Y. 1984) ................................................. 30

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba,*
    462 U.S. 611 (1983) ....................................................................... 28

*Flomo v. Firestone Nat. Rubber Co., LLC,*
    643 F.3d 1013 (7th Cir. 2011) ............................................... *passim*

*Flores v. S. Peru Copper Corp.,*
    414 F.3d 233 (2d Cir. 2003) ........................................................... 28

*Hamdan v. Rumsfeld,*
    548 U.S. 2749 (2006) .................................................................... 23

*Illinois v. City of Milwaukee, Wisc.,*
    406 U.S. 91 (1972) ......................................................................... 16

*In re Estate of Marcos Human Rights Litig.,*
    25 F.3d 1467 (9th Cir. 1994) ................................................... 10, 19

*In re S. Afr. Apartheid Litig.,*
    15 F.Supp.3d 454 (S.D.N.Y. 2014) .......................................... 2, 6, 14

*Kadić v. Karadžić,*
    70 F.3d 232 (2d Cir. 1995)..................................................... 13, 19, 21

*Khulumani v. Barclay Nat'l Bank Ltd.,*
    504 F.3d 254 (2d Cir. 2007).................................................. 16, 19, 23

*Kiobel v. Royal Dutch Petroleum Co.,*
    133 S. Ct. 1659 (2013) ............................................................ *passim*

*Kiobel v. Royal Dutch Petroleum Co.,*
    621 F.3d 111 (2d Cir. 2010).................................................... *passim*

*Kiobel v. Royal Dutch Petroleum Co.,*
    642 F.3d 379 (2d Cir. 2011)...................................................... 22, 23

*Marsh v. Rosenbloom,*
    499 F.3d 165 (2d Cir. 2007) ............................................................ 17

*Meyer v. Holley,*
    537 U.S. 280 (2003) .................................................................... 16, 25

*Morrison v. Nat'l. Australia Bank, Ltd.,*
    561 U.S. 27 (2010) ............................................................................ 7

*Presbyterian Church of Sudan v. Talisman Energy Inc.,*
    582 F.3d 244 (2d Cir. 2009)............................................................ 23

*Romero v. Drummond Co., Inc.,*
    552 F.3d 1303 (11th Cir. 2008) ........................................................ 9

*Samantar v. Yousuf,*
    130 S. Ct. 2278 (2010) .................................................................... 16

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) ............................................................... *passim*

*Steel Co.* v. *Citizens for Better Environment,*
    523 U.S. 83 (1998) ........................................................................... 7

*Tel-Oren v. Libyan Arab Republic,*
    726 F.2d 774 (D.C. Cir. 1984) ................................................. *passim*

*Tex. Clinical Labs Inc. v. Leavitt,*
    535 F.3d 397 (5th Cir. 2008) .......................................................... 17

*Textile Workers Union v. Lincoln Mills,*
    353 U.S. 448 (1957) ...................................................................... 26

*Trustees of Dartmouth Coll. v. Woodward,*
    17 U.S. (4 Wheat.) 518 (1819) ...................................................... 27

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ................................................................. 25, 27

*United States v. Kimbell Foods,*
    440 U.S. 715 (1979) ........................................................ 15, 16, 24

*Xuncax v. Gramajo,*
    886 F. Supp. 162 (D. Mass. 1995) ................................................. 11

Federal statutes and rules

Alien Tort Statute, 28 U.S.C. § 1350 .............................................. *passim*

Federal Rule of Civil Procedure 17 .......................................................... 17

International cases

*Barcelona Traction, Light and Power Co., Ltd. (Belg. v. Spain),*
    1970 I.C.J. 3 (Feb. 5) ................................................................... 28

*In re Tesch,*
    13 Int'l L. Rep. 250 (Br. Mil. Ct. 1946) ........................................ 30

*Prosecutor v. Tadić,*
    Case No. IT-91-1-T, Opinion & Judgment (May 7, 1997).............. 14

Restatements, treatises, briefs, opinions, and law review articles

William Blackstone,
  *An Analysis of the Laws of England* (6th ed. 1771) ...................... 11

Brief of International Human Rights Organizations as Amici Curiae in Support of Petitioners, *Kiobel v. Royal Dutch Petroleum*,
  No. 10-1491 (S. Ct. Dec. 2011) ........................................................ 29

Brief of Professors of Federal Jurisdiction and Legal History as
  Amici Curiae in Support of Respondents in
  *Sosa v. Alvarez-Machain*, 2003 U.S. Briefs 339,
  *reprinted in* 28 HASTINGS INT'L & COMP. L. REV. 99
  (Feb. 27, 2004) ................................................................................. 31

Brief for the United States as Amicus Curiae Supporting Petitioners,
  *Kiobel v. Royal Dutch Petroleum*,
  No. 10-1491 (S. Ct. Dec. 2011) ............................................... *passim*

William S. Dodge, *The Historical Origins of the Alien Tort Statute:*
  *A Response to the "Originalists,"*
  19 HASTINGS INT'L & COMP. L. REV. 221 (1996) ............................. 18

James Kent, *Commentaries on American Law* ...................................... 11

Kenneth C. Randall, *Federal Jurisdiction over International*
  *Law Claims: Inquiries into the Alien Tort Statute,*
  18 N.Y.U. J. INT'L L. & POL. 1 (1985) .............................................. 18

## STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE

*Amici curiae* are human rights and labor organizations concerned with the enforcement of international law, including remedies against corporations. (A list of *amici* and their interests is in the attached Appendix.) International law is primarily enforced through domestic mechanisms and there is a global consensus that corporations are subject to human rights law. Limiting accountability for human rights violations to norms and actors subject to international tribunals, and excluding abuses committed or abetted by corporations, among others, would severely undermine global efforts to protect human rights, contrary to the efforts of *amici*.

The parties have consented to the filing of this brief.[1]

## STATEMENT OF THE ISSUE ADDRESSED BY *AMICI CURIAE*

The appropriate body of law to apply to the question of whether corporations can be sued under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, is federal common law. Under that body of law, corporations

---

[1] No counsel for a party authored this brief in whole or in part, and no persons other than *amici* funded it.

1

may be held civilly liable for violations of certain international law norms.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court below correctly held that the ATS permits suits against corporations. *In re S. Afr. Apartheid Litig.*, 15 F. Supp. 3d 454 (S.D.N.Y. 2014). A prior, divided panel of this Court had held that corporations were immune from liability for violations of universally recognized human rights, no matter how horrific the violation or extensive the corporation's participation. *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel I*"), 621 F.3d 111 (2d Cir. 2010). But that decision was directly undermined by subsequent Supreme Court authority. *In re S. Afr. Apartheid Litig.*, 15 F. Supp. 3d at 460 (citing *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel II*"), 133 S. Ct. 1659 (2013); *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)); *accord Doe v. Nestle U.S.A., Inc.*, 738 F.3d 1048, 1049 (9th Cir. 2013); Appellants' Opening Brief (AOB) at 52-53.

*Kiobel II* also implicitly overruled *Kiobel I* in a way the district court did not recognize. *Kiobel I* held that the ATS does not provide *jurisdiction* over claims against corporations. But when the Supreme

2

Court decided in *Kiobel II* that the policies underlying the presumption against extraterritoriality barred those same ATS claims, it decided a *merits* question. *See* 133 S. Ct. at 1664. The Court could not reach the merits unless it concluded that it *had* jurisdiction. So it must have concluded that *Kiobel I* was wrongly decided.

And it was wrongly decided. Corporate immunity is anathema even for garden-variety torts. But *Kiobel I* would create an exemption from liability for acts like genocide that are so universally reviled that they render the perpetrator "an enemy of all mankind." *See Filártiga v. Peña-Irala*, 630 F.2d 876, 890 (2d Cir. 1980). *Kiobel I* therefore contravenes the centuries-old understanding, common to our legal system and every other, that juridical persons can be sued just like natural persons.

"Sometimes, it's in the interest of a corporation's shareholders for management to violate . . . norms of customary international law." *Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013, 1018 (7th Cir. 2011) (Posner, J.). Yet *Kiobel I* rewards those few corporations willing to do so. Indeed, it penalizes corporations that respect fundamental rights by forcing them to compete on an uneven playing field with those that

3

choose to profit from the worst kinds of atrocity. And it denies redress to those harmed.

Nothing in federal or international law requires this. Every other Circuit to have considered the question, as well as the United States Government, agrees: corporations may be sued under the ATS. *E.g., Nestle*, 738 F.3d at 1049; *Flomo*, 643 F.3d at 1021; *Doe v. Exxon Mobil Corp.,* 654 F.3d 11, 57 (D.C. Cir. 2011), *vacated on other grounds*, 527 F. App'x 7 (D.C. Cir. 2013); Brief for the United States as Amicus Curiae Supporting Petitioners, *Kiobel v. Royal Dutch Petroleum*, No. 10-1491 (U.S. Dec. 2011) [hereinafter "Brief for United States as Amicus Curiae"].

*Kiobel I* held that international law controls the question of whether corporations can be sued and, limiting its analysis to international *criminal* law, that international law does not provide for corporate liability. 621 F.3d at 118-20. Both propositions are mistaken. Federal common-law rules apply. The ATS is jurisdictional and its jurisdiction is triggered by a violation of certain rights guaranteed by international law: the injury to the plaintiff must be barred by the law of nations. *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). But there

4

need not be an international law cause of action for that violation. Once jurisdiction is established, an ATS cause of action is provided by *federal common law*. *Id.*

Even if courts looked to international law to determine whether corporations can be liable, international law itself leaves the question of how international norms will be enforced to domestic law. This principle has been recognized since the drafting of the ATS. Faithful adherence to it is especially warranted in the context of private civil liability, for which international law typically does not provide a forum, and for corporations, which are created by municipal law.

Corporate liability has been a feature of the common law since the Founding. International law, in the form of general principles recognized by all of the world's legal systems, also recognizes such liability.

Corporate liability is inherent in the whole notion of incorporation, which allows suits against the corporation in exchange for the limitation of shareholder liability. Corporate immunity would frustrate the congressional purpose of providing an adequate federal forum for enforcing fundamental human rights norms, by uniquely

5

shielding the corporate "person," even where all other persons and individual actors would be responsible. The ATS provides no such exception.

## ARGUMENT

## I.    The Supreme Court's decision in *Kiobel II* accepts that corporations can be sued.

The Supreme Court's holding in *Kiobel II* that "mere corporate presence" was insufficient to displace the presumption against extraterritoriality presumes that, under other circumstances, corporations are amenable to suit. *See* 133 S. Ct. at 1669. Therefore *Kiobel I* cannot be reconciled with *Kiobel II*. *In re S. Afr. Apartheid Litig.*, 15 F.Supp.3d at 460; AOB at 52.

*Kiobel II* also undermines *Kiobel I* because the Supreme Court must have determined that it had subject matter jurisdiction before it reached the merits. The ATS does two things: (1) it provides subject matter *jurisdiction* to the federal courts; (2) it allows federal courts to recognize certain *causes of action* as a matter of *federal common law*. *Sosa*, 542 U.S. at 712, 724.

*Kiobel I* held that the ATS does not provide *jurisdiction* over suits against corporations. 621 F.3d at 148-49. The Supreme Court granted

certiorari on that issue, which was fully briefed and argued. But the Court decided the case on extraterritoriality grounds. *Kiobel II* is clear that ATS extraterritoriality is not jurisdictional. The Court cited the holding in *Morrison v. Nat'l. Australia Bank, Ltd.* 561 U.S. 27 (2010), that application of the presumption against extraterritoriality is a "merits question." *Kiobel II*, 133 S. Ct at 1664. And it found that "the principles underlying the [presumption] *similarly* constrain courts considering *causes of action* that may be brought under the ATS." *Id.* (emphasis added); that is, they "constrain courts *exercising their power* under the ATS." *Id.* at 1665 (emphasis added). Thus, *Kiobel II* addressed the scope of federal common law *claims*, not the scope of ATS jurisdiction. *See id.* at 1669 (the "presumption against extraterritoriality applies to *claims under* the ATS") (emphasis added).

The Court could not assume that it had jurisdiction in order to reach the merits. *Steel Co.* v. *Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998). Because the Court reached the merits question of extraterritoriality, even though a jurisdictional issue was squarely presented, it clearly did not see a corporate defendant as a jurisdictional bar. Thus, the Supreme Court necessarily overruled *Kiobel I*'s sole

7

holding – that there was no ATS jurisdiction over a suit against a corporation.

## II. Federal common law governs the issue of whether corporations can be sued under the ATS.

The *Kiobel I* panel erroneously concluded that, in order for corporations to be held liable under the ATS, customary international law must specifically provide for corporate liability. 621 F.3d at 118. That conclusion conflicts with the statute's text, the Supreme Court's holding in *Sosa* that an ATS claim is a common law cause of action, the historic practice of federal courts applying federal common law to effectuate federal claims, the ATS's original purpose of ensuring that claims involving international law could be heard in federal court and the structure of international law, which leaves the means of enforcement of international norms to domestic law.

All of this points to a single conclusion: while customary international law defines the content of the right whose violation gives rise to ATS jurisdiction, federal common law determines whether corporations may be held liable.

A.  **The text of the ATS, *Sosa,* the ordinary role of federal common law and the purpose of the ATS all direct the court to federal common law.**

1.  **The text of the ATS requires that federal common law governs.**

The ATS grants jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations." 28 U.S.C. § 1350. The statute "by its terms does not distinguish among classes of defendants." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 438 (1989). This alone shows that the ATS does not bar corporate liability. *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1315 (11th Cir. 2008) (finding corporations can be sued based on the statute's text).

At a minimum, the statute's plain language refutes the contention that international law governs. *Kiobel I,* however, misread the text to mean that a specific cause of action against a corporation must exist under customary international law. 621 F.3d at 121-22. But the text of the ATS does not require that the cause of action "arise under" the law of nations; "by its express terms, nothing more than a *violation* of the law of nations is required [for jurisdiction under the ATS]." *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 779 (D.C. Cir. 1984) (Edwards, J.,

9

concurring); *accord In re Estate of Marcos Human Rights Litig.*, 25 F.3d 1467, 1475 (9th Cir. 1994). So the text does not require that international law define who can be a proper defendant, only that the infringed-upon *right* be recognized under international law.

The use of the word "tort" also forecloses the argument that international law controls. "Tort" is a domestic law concept. Once there is jurisdiction over a tort suit for the violation of a particular international norm, domestic tort law, including corporate liability, applies.

The *Kiobel I* panel's reading of the ATS cannot be reconciled with the text.

> **2.** *Sosa* **directs courts to apply federal common law.**

The ATS's "jurisdictional grant is best read as having been enacted on the understanding that the common law would provide [the] cause of action." *Sosa*, 542 U.S. at 724. While there must be a "violation[] of [an] international law norm," ATS claims are "claims under federal common law." *Id.* at 732; *accord id.* at 721. Thus, contrary

10

to *Kiobel I*, cases both before and after *Sosa* have applied federal common law to issues beyond the right violated.[2]

*Sosa*'s conclusion that federal law provides the cause of action flows expressly from the eighteenth-century understanding of international law. *See id.* at 714-24. *Sosa* recognized certain violations of international norms by private parties "threaten[ed] serious consequences in international affairs," and that these violations were "admitting of a judicial remedy" — *i.e.*, subject to domestic enforcement. *Id.* at 715.

Blackstone, upon whom *Sosa* relied, confirms that when violations of international law are "committed by private subjects," they "are then the objects of the municipal law." William Blackstone, *An Analysis of the Laws of England* 125 (6th ed. 1771). Kent's *Commentaries*, also cited by *Sosa*, note that "[t]he law of nations is likewise enforced by the sanctions of municipal law." 1 James Kent, *Commentaries on American Law* *181–82. This is why *Sosa* speaks of recognizing claims "under

---

[2] *See, e.g.*, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1158 (11th Cir. 2005); *Abebe-Jira v. Negewo*, 72 F.3d 844, 848 (11th Cir. 1996); *Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 120 n.12 (D.D.C. 2003); *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1094 (S.D. Fla. 1997); *Xuncax v. Gramajo*, 886 F. Supp. 162, 182–83 (D. Mass. 1995).

federal common law for violations of [an] international law norm." 542 U.S. at 732.

The ambit of federal common law necessarily includes substantive liability rules. *Id.* at 729 (noting the ATS is one of the "post-*Erie* . . . limited enclaves in which federal courts may derive some *substantive* law in a *common law way*") (emphasis added). Indeed, the cause of action must be determined as a matter of common law, because international law, both today and when the ATS was passed, does not address the scope of *civil* liability for violations but instead leaves such matters to domestic law. *See infra* Section II.B.

Accordingly, once the jurisdictional threshold has been met — a violation of a *right* protected by the law of nations — there is a federal common law cause of action and federal common law provides the rules governing liability. *See* Section II.B *infra.*

The *Kiobel I* panel relied on footnote 20 of *Sosa* to conclude that customary international law governs the scope of ATS liability. 621 F.3d at 127–28 (citing 542 U.S. at 732 n.20). But footnote 20 did not address liability. Instead, it recognized that certain international *norms* require state action, and suggested that whether, for a given norm, the

perpetrator must be a state actor is a question of international law. *Sosa*, 542 U.S. at 732 n.20. This fully accords with the distinction between the *right* violated (defined by international law) and the scope of the remedial *cause of action* (provided by domestic law).

Where international law requires state action, it is an element of the offense and thus part of what defines whether any international right has been violated. For example, torture typically implicates international law only if state actors or persons acting under color of law are involved; torture by a purely private party is not generally a violation of the law of nations. *See Kadić v. Karadžić*, 70 F.3d 232, 240 (2d Cir. 1995). Absent state action, there would be no ATS jurisdiction over either a corporation or an individual for a violation of the right not to be tortured.

By contrast, customary international law prohibits other abuses, such as genocide, regardless of state involvement. *See id.* The distinction — and the reason that the state action element is governed by international law — is that not all acts that international law forbids if committed by a state actor are of sufficiently "universal concern" if committed by a private actor. *See id.*

13

There is no comparable dichotomy between liability for natural persons and corporations. There is no act that would be a violation of international law if committed by an individual, but would not be if committed by a corporation. *See* Brief of United States as Amicus Curiae at 20 (United States is "not aware of any international law norm, accepted by civilized nations and defined with the degree of specificity required by *Sosa*, that requires, or necessarily contemplates, a distinction between natural and juridical actors.").[3] An abuse that is of universal concern is not any less so because a corporation is responsible. And footnote 20 makes no such distinction; it actually treated corporations and natural persons in the same way. *See Kiobel I*, 621 F.3d at 165 (Leval, J., concurring in the judgment); Brief of United States as Amicus Curiae at 18; *In re S. Afr. Apartheid Litig.*, 15 F. Supp.3d at 463.

---

[3] *Accord Bowoto v. Chevron Corp.*, No. C 99-02506, 2006 U.S. Dist. LEXIS 63209, *37 (N.D. Cal. Aug. 22, 2006) (noting that international law provides little reason to differentiate between corporations and natural persons); *see also Prosecutor v. Tadi* , Case No. IT-91-1-T, Opinion & Judgment ¶ 655 (May 7, 1997) (crimes against humanity can be committed by "*any* organization or group, which may or may not be affiliated with a Government" (internal punctuation omitted)).

14

Whether a corporation can be held liable is not an element of the international law right that a plaintiff must prove has been violated in order to establish jurisdiction. Rather, it is a question that arises only after the plaintiff establishes jurisdiction. Nothing in footnote 20 suggests that, where a violation of international law has been committed, international rules must determine who can be held liable for that violation.

*Sosa* contemplated an ordinary common law tort claim to remedy violations of certain universally recognized human rights norms. Accordingly, the *Kiobel I* majority erred when it held that ATS cases cannot be brought against corporations unless international law itself expressly provides for corporate liability.

### 3. Courts generally look to federal liability rules to effectuate federal causes of action.

Federal courts regularly apply general liability rules to give effect to federal causes of action. *See United States v. Kimbell Foods*, 440 U.S. 715, 727 (1979); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–55 (1998) (fashioning a "uniform and predictable standard" of vicarious liability in Title VII actions "as a matter of federal law").

15

When Congress creates a tort action, it "legislates against a legal background" of ordinary tort liability rules. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Should Congress wish to abrogate a common-law rule, the statute must "speak directly" to the question addressed by the common law. *Id.* And even where a statute "clearly covers a field formerly governed by the common law," courts should interpret the statute "consistently with the common law." *Samantar v. Yousuf*, 130 S. Ct. 2278, 2289 (2010). If a statute that *displaces* the common law should be interpreted consistently with common law rules, then a statute, like the ATS, that creates jurisdiction to hear *common law claims* must be be too.

Courts also apply federal common law "to fill the interstices of federal legislation." *Kimbell Foods*, 440 U.S. at 727; *accord Sosa*, 542 U.S. at 726 (discussing this rule); *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 287 (2d Cir. 2007) (Hall, J., concurring) (applying this rule to the ATS).[4] The text of the ATS neither precludes corporate

---

[4] *See also County of Oneida, N.Y. v. Oneida Indian Nation of New York State,* 470 U.S. 226, 237 (1985) (noting that federal common law is a "necessary expedient" where a statute has not spoken to an issue and applying federal common law to question of whether plaintiff had a right of action); *Illinois v. City of Milwaukee, Wisc.*, 406 U.S. 91, 100–04

liability nor requires that the question be resolved under international law. *See supra* Section II.A.1. Thus, even if the text and *Sosa* were agnostic on the proper body of law to apply, which they are not, such silence would be a further reason to look to federal common law.[5]

### 4. Congress' original purpose of providing a federal forum suggests that who can be sued must be determined by common law rules.

In passing the ATS, Congress sought to provide a federal forum for the limited subset of torts that implicate the law of nations. The First Congress was concerned about "the inadequate vindication of the law of nations." *Sosa*, 542 U.S. at 715-19. State courts already had jurisdiction over such suits. *Id.* at 722; *Tel-Oren*, 726 F.2d at 790 (Edwards, J., concurring). But Congress was afraid that *state* courts

---

(1972) (holding that federal courts may fashion federal common law remedies regarding interstate water pollution, a matter of federal concern, where federal legislation did not address the specific issue).
[5] *Kiobel I* also conflicts with Federal Rule of Civil Procedure 17(b)(2); a corporation's capacity to be sued is determined "under [the law by] which it was organized." *E.g. Cmty. Elec. Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1239 (9th Cir. 1989); *Tex. Clinical Labs Inc v. Leavitt*, 535 F.3d 397, 403 (5th Cir. 2008); *see also Marsh v. Rosenbloom*, 499 F.3d 165, 176–77, 184 (2d Cir. 2007) (citing Rule 17(b) and holding that CERCLA does not preempt state law regarding corporate capacity). While Rule 17 points to the law of the place of incorporation rather than federal common law, it confirms that international law does not control.

could not be trusted to give aliens a fair hearing and might come to
divergent conclusions about the content of the law of nations; it
therefore wanted to provide an alternative, *federal* forum. *Tel-Oren*, 726
F.2d at 783-84, 790-91 (Edwards, J., concurring); William S. Dodge, *The
Historical Origins of the Alien Tort Statute: A Response to the
"Originalists,"* 19 HASTINGS INT'L & COMP. L. REV. 221, 235-36 (1996).
Thus, the First Congress desired to make federal courts *more accessible*
to foreigners bringing these sorts of tort claims. *See* Kenneth C.
Randall, *Federal Jurisdiction over International Law Claims: Inquiries
into the Alien Tort Statute*, 18 N.Y.U. J. INT'L L. & POL. 1, 21 (1985).

Given these aims, the First Congress would have expected federal
courts to resolve the question of who could be sued by reference to the
familiar body of general common law — just as state courts would do.
Any other approach could potentially exclude from federal court certain
suits involving violations of the laws of nations even though those same
suits would be heard in state court. That is precisely what the statute
meant to avoid. *Tel-Oren*, 726 F.2d at 790–91 (Edwards, J., concurring).

## B.   International law itself requires the conclusion that federal common law applies.

Even if the *Kiobel I* majority were correct that courts must *first* look to international law, the applicable rule would still ultimately come from federal common law, because international law directs courts to domestic law. The Framers' understanding that international law is enforced through domestic law remains true today.

As courts in ATS cases have long recognized, and the United States affirmed, international human rights law leaves the manner in which it is enforced to States' discretion. *E.g., Kadić* 70 F.3d at 246 (international law "generally does not create private causes of action to remedy its violations, but leaves to each nation the task of defining the remedies that are available").[6]

---

[6] *Accord Exxon Mobil*, 654 F.3d at 51 (The "'position of international law on whether civil liability should be imposed for violation of its norms is that international law takes no position and leaves that question to each nation to resolve.'") (quoting *Kiobel I*, 621 F.3d at 152 (Leval, J., concurring in the judgment)); *Flomo*, 643 F.3d at 1020; *Marcos*, 25 F.3d at 1475; *Kiobel I*, 621 F.3d at 172–76, 187–89 (Leval, J., concurring) (international law establishes "norms of prohibited conduct," but "says little or nothing about how those norms should be enforced," leaving these questions to domestic law); *Khulumani*, 504 F.3d at 286 (Hall, J., concurring); *Tel-Oren*, 726 F.2d at 778 (Edwards, J., concurring) (the law of nations does not "define the civil actions to be made available by each . . . nation[]," and although international law governs whether

19

Consistent with that international principle, the Supreme Court in *Sosa* adopted the position, discussed in detail by Judge Edwards in his concurrence in *Tel-Oren*, 726 F.2d at 777-82, that under the ATS, international law itself need not provide a private cause of action; the Court rejected Judge Bork's contrary view, which would have nullified the ATS. *Sosa*, 542 U.S. at 714, 724, 729-31. Thus, *Sosa*, like international law, distinguishes the question of whether a person has suffered a violation of an international right from the scope of the remedial cause of action a state chooses to provide.[7]

The *Kiobel I* majority conceded that international law "leave[s] remedial questions to States." 621 F.3d at 147. But it defined "remedial" in its narrowest sense, limiting it to forms of *relief* available — damages, declaratory relief, an injunction — without regard to how the term is used in international law. *Id.* at 147 & n.50. As *Sosa* recognized,

---

there has been a violation, the decision of "how the United States wishe[s] to react to such violations [is a] domestic question"); Brief for United States as Amicus Curiae at 19.

[7] *See Flomo*, 643 F.3d at 1019 (distinguishing a customary international law principle from "the means of enforcing it, which is a matter of procedure or remedy"); *Exxon Mobil*, 654 F.3d at 41–42 (holding that because international law "creates no civil remedies and no private right of action [] federal courts must determine the nature of any [ATS] remedy . . .by reference to federal common law")

20

"remedy" in this context signifies the means to enforce a right, equivalent to a cause of action. In discussing whether to allow a cause of action for the brief detention at issue in that case, the Supreme Court referred to "the creation of a federal remedy." 542 U.S. at 738. That plainly speaks to whether a cause of action was available, not what form of relief the plaintiff might recover.

Thus, international law provides the right and domestic law provides the right of action — the remedy to enforce that right. Judge Leval's concurrence in *Kiobel I* recognized that the "remedy" at issue in this context is the means of enforcement and redress generally, and is thus much broader than merely what kind of relief a plaintiff may recover. *Kiobel I*, 621 F.3d at 175 n.33 (Leval, J., concurring in the judgment). Indeed, in conflating "remedy" with "relief," *Kiobel I* departed from established Second Circuit law. In *Kadić*, this Court equated "creat[ing] private causes of action" under the ATS with "defining the remedies." 70 F.3d at 246.

The *Kiobel I* panel's position would render meaningless the principle that international law allows States to define domestic remedies, and would render the ATS a nullity. The specific type of relief

21

available only matters if there *is* a civil cause of action. But international law does not provide one. Under the panel's approach, there would be *no* claims for which the courts could apply relief — against a corporation or a natural person, *see Flomo*, 643 F.3d at 1019; *Kiobel I*, 621 F.3d at 153, 176, 178 (Leval, J., concurring in the judgment) — and thus no issue left to domestic law.

The *Kiobel I* majority's view that the ATS requires that international law provide a right to sue corporations is simply a version Judge Bork's position, rejected by *Sosa*, that international law must provide the right to sue. *Kiobel I*, 621 F.3d at 176 (Leval, J., concurring in the judgment).[8] Since international law does not provide a right to sue *anyone* for customary international law violations, it cannot be expected to explicitly provide a right to sue a corporation. *Id.*

For this reason, courts and judges have explicitly rejected the *Kiobel I* approach and instead applied federal common law to this issue. *Flomo*, 643 F.3d at 1019–20; *Exxon Mobil*, 654 F.3d at 41–43, 50; *Kiobel I*, 621 F.3d at 174–76 (Leval, J., concurring in the judgment); *see also Kiobel v. Royal Dutch Petroleum Co.*, 642 F.3d 379, 380 (2d Cir. 2011)

---

[8] The majority appears to acknowledge that it embraced this view. 621 F.3d at 122, n.24.

(Lynch, J., dissenting from denial of rehearing en banc) (four judges opining that, "for the reasons stated by Judge Leval," the *Kiobel* decision is "very likely incorrect"). The *Kiobel I* majority's opinion cannot be reconciled with the manner in which international law contemplates its own enforcement.[9]

## III. Federal common law provides for corporate liability.

Concluding that federal common law rules govern the issue of corporate liability does not end the inquiry. The Court must consider

---

[9] That corporate liability is a federal common law question is clear regardless of where the line is drawn in other areas, such as accomplice liability. In *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 258 (2d. Cir. 2009), this Court held that international law governs complicity standards, based on the belief that conduct-regulating norms must come from international law. *Accord Khulumani*, 504 F.3d at 268–70 (Katzmann, J., concurring); *Exxon Mobil*, 654 F.3d at 30, 33. Under another view, federal common law governs, in part because the means of domestic enforcement that international law leaves to States includes at least some theories of accessorial liability. *E.g.*, *Khulumani*, 504 F.3d at 286–87 (Hall, J., concurring); *see generally Hamdan v. Rumsfeld*, 548 U.S. 557, 611 n.40 (2006) (op. of Stevens, J.) (noting that aiding and abetting is a theory of liability for a violation, not an aspect of the right violated). Notably, judges who believe that accomplice liability should be determined according to customary international law have also rejected *Kiobel I* and concluded that corporate liability is determined according to domestic law, at least in part because corporate liability is not conduct-regulating. *Exxon Mobil*, 654 F.3d at 41–43, 50–51; *Kiobel I*, 621 F.3d at 187–89 (Leval, J., concurring); *Kiobel*, 642 F. 3d at 380–81 (Katzmann, J., dissenting from denial of *en banc* review).

what sources to consult as part of a federal common law analysis and then discern the applicable rule. The primary source is well-established federal or traditional common law rules, as well as relevant international law. The rule established must best implement Congress' purposes in enacting the statute. Thus, the question is, when a norm that meets *Sosa*'s threshold test is violated, does corporate liability or corporate immunity better effectuate Congress' aims?

Discerning the rule here is easy. Under both ordinary common law principles and international law, corporations are liable on an equal footing with natural persons. This rule also vindicates the policies animating the ATS. Accordingly, the Court should adopt the usual rule of corporate liability rather than creating a special rule that corporations should be immune from suit when they participate in violations of universally recognized human rights.

### A.     The ATS should employ a uniform federal rule based on traditional common law principles.

In discerning a federal common law rule, courts must decide whether to adopt state law or apply a uniform federal rule. *E.g. Kimbell Foods*, 440 U.S. at 727. In cases involving international law, courts should apply a uniform federal rule. *Banco Nacional de Cuba v.*

24

*Sabbatino*, 376 U.S. 398, 425–26 (1964). This is especially true here, since one purpose of the ATS was to ensure that a uniform body of law would apply to these kinds of claims. *See supra* Section II.A.4.

The appropriate focus is on ordinary common law tort principles. As noted above, the ATS creates a federal cause of action under which federal common law tort principles are used to redress violations of customary international law. Such reference to widely applied common law principles also accords with the manner in which federal courts typically establish uniform federal standards, *e.g.*, *Burlington Indus.*, 524 U.S. at 754, as well as the rule that Congress must "speak directly" to a question in order to abrogate a common law principle. *Meyer*, 537 U.S. at 285. Indeed, the Supreme Court has held that "the failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of" this rule. *United States v. Bestfoods*, 524 U.S. 51, 63 (1998).

Due to the unique nature of ATS claims as federal common law claims vindicating international law rights, it may also be appropriate to consider international legal principles. For example, in determining the relative rights of contending states, which are analogous to

25

individual nations, the Supreme Court has looked to international law as well as federal and state law. *Connecticut v. Massachusetts*, 282 U.S. 660, 670 (1931). International law may contain gaps that make it inappropriate as the primary source of liability rules; yet, where international law accords with established federal law, there can be little argument against its application in ATS cases, in part because international law is part of federal law. *Sosa*, 542 U.S. at 729.

The touchstone, however, remains federal common law. This means that a liability rule need not meet *Sosa*'s threshold standard for determining whether there has been a violation that supports jurisdiction. It also means that an international principle that accords with federal common law provides further support for that common law standard, even if the international principle does not meet the *Sosa* test.

The federal common law rule must implement the policies underlying the statute at issue. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957); *Abebe-Jira v. Negewo*, 72 F.3d 844, 848 (11th Cir. 1996) (applying *Textile Workers* to the ATS). Thus, the applicable

26

rule in this case must give effect to Congress' decision to recognize tort liability for violations of international law.

Here, the precise methodology for determining the applicable federal common law rule is not critical, because, as the next sections demonstrate, ordinary common law principles, international law and the policies animating the ATS all require corporate liability.

### B. Under federal common law and international law, corporations are subject to the same liability rules as natural persons.

The common law subjects corporations to the same civil liability as natural persons; this is inherent in the whole notion of corporate personality, and has been the rule for centuries.[10] Indeed, the Supreme Court noted well over a hundred years ago that the common law principle that a corporation is equally responsible as a natural person for torts done by its servants is "so well settled as not to require the citation of any authorities." *Baltimore & P.R. Co. v. Fifth Baptist Church,* 108 U.S. 317, 330 (1883); *see also* Brief of the United States as

---

[10] *See Exxon Mobil*, 654 F.3d at 47-48 (collecting cases); *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 667 (1819) (noting that a "corporation at common law . . . possesses the capacity . . . of suing and being sued") (op. of Story, J.); *Bestfoods*, 524 U.S. at 62-65 (applying ordinary common law principles to CERCLA and finding that corporations can be held liable).

Amicus Curiae at 25 (noting that "the proposition that corporations are 'deemed persons' for 'civil purposes,' and can be held civilly liable, has long been recognized as 'unquestionable'") (internal citations omitted). *Amicus* is aware of no state that departs from this rule.

International law supports federal common law. In *Barcelona Traction, Light and Power Co., Ltd. (Belg. v. Spain)*, 1970 I.C.J. 3 (Feb. 5), the International Court of Justice noted that international law recognized corporations as institutions "created by States" within their domestic jurisdiction, and that the court therefore needed to look to general principles of law — a species of international law derived from principles common to States' domestic law — to answer questions about corporate separateness. *Id.* at 33-34, 37.

The Supreme Court, citing *Barcelona Traction*, upheld a counterclaim "aris[ing] under international law" against a Cuban government corporation for the illegal expropriation of property, under principles "common to both international law and federal common law." *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 623 (1983). And, as this Circuit has recognized, general principles provide rules applicable in ATS cases. *Flores v. S. Peru*

28

*Copper Corp.*, 414 F.3d 233, 251 (2d Cir. 2003). All legal systems recognize that corporations can be sued; this is a general principle of law.[11] The "understanding of corporate personhood [reflected in *FNCB* and *Barcelona Traction*] is directly contrary to the conclusion of the majority in *Kiobel [I]*." *Exxon Mobil*, 654 F.3d at 54.

Since the rule that corporations can be held liable in tort is clear in both domestic and international law, it should be applied under the ATS.

### C.    Corporate liability best effectuates the Framers' purposes in passing the ATS.

As *Sosa* recognized, the ATS was enacted to vindicate the laws of nations. 542 U.S. at 717. The ATS expresses a Congressional policy of using tort law to redress international wrongs. The same corporate liability rule that ordinarily applies in tort cases furthers Congress' goals in passing the statute.

---

[11] *See* Brief of *Amici Curiae* International Human Rights Organizations in Support of Petitioners, *Kiobel v. Royal Dutch Petroleum*, No. 10-1491 (U.S. June 13, 2012), available at http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/10-1491_petitioner_amcu_international.authcheckdam.pdf

First, liability rules under the ATS must reflect the universal condemnation of the underlying violations. *Filártiga v. Peña-Irala*, 577 F. Supp. 860, 863 (S.D.N.Y. 1984). A holding that the corporate liability that applies to run-of-the-mill torts does not apply to genocide, state-sponsored torture or crimes against humanity would turn this principle on its head. International law is subverted if, for example, a modern day Tesch & Stabenow — whose top officials were convicted at Nuremberg for supplying poison gas for the death chambers of Auschwitz, *In re Tesch*, 13 Int'l L. Rep. 250 (Br. Mil. Ct. 1946) — can participate in and profit from atrocity and not be held to account by its victims.

Second, tort law's twin aims — compensation and deterrence — cannot be achieved without holding corporations liable. Where a corporation is involved in abuse, the corporation, not its agents, reaps the profits. Thus, there is no reason to believe that the agents have the wherewithal to provide redress. *Flomo*, 643 F.3d at 1019; *Kiobel I*, 621 F.3d at 179 (Leval, J., concurring in the judgment); Brief of United States as Amicus Curiae at 24. And since it is sometimes in a corporation's interests to violate international law, *Flomo*, 643 F.3d at

30

1018, a rule that only a corporation's agents are potentially liable would under-deter abuse.

Third, in many ATS cases, the plaintiffs also plead state-based common law tort claims. Precluding corporate liability under the ATS would disadvantage aliens' claims arising under the law of nations *vis-a-vis* their state law claims — thus "treat[ing] torts in violation of the law of nations less favorably than other torts," contrary to the Framers' understanding. *See* Brief of Professors of Federal Jurisdiction and Legal History as Amici Curiae in Support of Respondents in *Sosa v. Alvarez-Machain*, 2003 U.S. Briefs 339, *reprinted in* 28 HASTINGS INT'L & COMP. L. REV. 99, 110 (2004).[12]

Fourth, refusing to recognize corporate liability would lead to absurd results. The ability to sue the corporation is inherent in the notion of limited shareholder liability; plaintiffs may sue the corporation *because* limited liability ordinarily immunizes the shareholders. If corporations were not legal persons that could be sued, they could not be considered legal persons separate from their

---

[12] This brief's argument that ATS claims were part of the common law and required no implementing legislation was adopted by *Sosa*. 542 U.S. at 714.

shareholders. And if a corporation is not a separate person, it is simply an aggregation of agents (the corporation's directors, officers and employees) acting on the shareholders' behalf. Thus, if corporations cannot be sued, the *shareholders* would be liable on an agency theory for everything that employees of the company do, without need to pierce any veil.

To find that neither corporations nor their shareholders could be sued, the Court would have to find an affirmative rule of corporate *immunity* — that shareholders may create a corporation to hold their assets and carry on their business, interpose that corporation as a shield against their own liability, and yet not subject the corporation to liability. Neither federal common law nor international law creates any such immunity. Corporate personality for the purposes of limiting shareholders' liability and corporate personality for the purposes of being sued are two sides of the same coin, and both derive from principles of domestic law common to all legal systems.

Under the ATS, the violation of a right under international law gives rise to a federal common-law tort cause of action. Where it is necessary to answer a question that the text does not address, courts —

32

giving due regard to the ATS's history and purposes — must resort to federal common law. The same corporate liability that applies to ordinary torts is perfectly appropriate for genocide, torture or slavery. Holding those that commit or assist crimes that transgress humanity's most fundamental values to a less exacting standard makes little sense.

## CONCLUSION

Whether corporations can be sued under the ATS for committing or abetting atrocities is determined by federal common law. Centuries-old common-law principles subject corporations to the same tort liability as natural persons. Nothing in law or logic warrants the creation of a new, special immunity for corporations involved in the very worst kinds of torts.

DATED: February 4, 2015

Respectfully submitted,

> */s/* Richard L. Herz
> Richard L. Herz
> *Counsel of Record*
> EarthRights International
> 1612 K Street, N.W. Suite 401
> Washington, DC 20006
> 202-466-5188 (ph)
> 202-466-5189 (fax)
>
> Counsel for *amicus curiae*

33

## ADDENDUM LIST OF *AMICI CURIAE*

**Accountability Counsel** is a non-profit legal organization

dedicated to assisting communities around the world who seek

accountability for violations of their environmental and human rights.

Among its clients are people harmed by large projects such as mines, oil

pipelines and agribusiness projects, where multinational corporations

are beyond the reach of weak rule of law in their host countries.

Accountability Counsel was founded in 2009 by lawyer Natalie

Bridgeman Fields, who has nearly a decade of experience with ATS and

TVPA litigation against corporations and individuals involved in

human rights violations in South America and South Africa.

**Center for Constitutional Rights** (CCR) is a nonprofit legal

and educational organization dedicated to advancing and protecting the

rights guaranteed by the United States Constitution and the Universal

Declaration of Human Rights. Since its founding in 1966 out of the civil

rights movement, CCR has litigated many international human rights

cases under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, against

natural persons, including *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir.

1980), which established that the Alien Tort Statute grants federal

courts jurisdiction to hear cases seeking compensation and other relief for violations of international law, and against corporations, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), *Doe v. Unocal Corp.*, 395 F.3d 932 (9th Cir. 2002), *Al Shimari v. CACI Premier Tech., Inc.,* 758 F.3d 516 (4th Cir. 2014),*In re: XE Services Alien Tort Litigation (Blackwater)*, 665 F. Supp. 2d 569 (D.D.C. 2009) and *Al-Quraishi v. Nakhla and L-3 Servs. Inc.*, 728 F. Supp. 2d 702 (D. Md. 2009). CCR has also served as amicus in numerous ATS cases, including *Kiobel v. Royal Dutch Petroleum* (U.S. 10-1491) and in this case before this Circuit in 2009 (09-2778-cv et al).

**EarthRights International** (ERI) is a human rights organization based in Washington, D.C., which litigates and advocates on behalf of victims of human rights abuses worldwide. ERI has represented plaintiffs in several lawsuits against corporations under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, alleging liability for, inter alia, aiding and abetting security forces in carrying out torture and extrajudicial killings in foreign countries. *E.g.*, *Doe v. Unocal Corp.*, No. 00-56603 (9th Cir.); *Bowoto v. Chevron C*

*orp.*, No. 09-15641 (9th Cir.); *Wiwa v. Royal Dutch Petroleum Corp.*, No. 96 Civ. 8386 (S.D.N.Y.); *Doe v. Chiquita Brands International,* No. 08-01916-MD (S.D.Fla).

**Human Rights Law Foundation** (HRLF) is a human rights non-governmental organization founded in 2005 to formalize a pre-existing cooperative relationship with human rights attorneys in the United States, Europe and Asia dating back to 2001. HRLF's core mission is to assist survivors of human rights abuses through direct litigation, global legal assistance, and an Underground Railroad project, which provides safety, refuge and self-help services for those at risk of persecution where they currently reside.

**International Rights Advocates** is a non-governmental organization that seeks to enforce international human rights norms through litigation and public campaigns.  International Rights Advocates has a particular interest in human rights litigation using the ATS and the Torture Victim Protection Act, and has been lead counsel in 15 cases using these laws.  International Rights Advocates also works with human rights lawyers in developing countries to coordinate

efforts requiring multinational companies to observe international law in their offshore operations.

**Service Employees International Union** (SEIU) is one of the largest labor unions in the world, an organization of 2.2 million members united by the belief in the dignity and worth of workers and the services they provide and dedicated to improving the lives of workers and their families and creating a more just and humane society. As part of its mission, SEIU acts in partnership with labor unions and other human rights and environmental groups worldwide, and SEIU has a long history of working to ensure that U.S. corporations are held accountable for transgressions of worker and human rights, regardless of where such violations occur.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. R. 32(a)

I certify that, pursuant to Federal Rules of Appellate Procedure 32(a)(7) and 29(d), the attached *amicus* brief complies with the type-volume limitation: it is proportionally spaced, has a typeface of 14 points or more and contains 6762 words, according to Microsoft Word, the word processing program used to prepare the brief.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word in 14-point, proportionally spaced Century Schoolbook font.

DATED: February 4, 2015  /s/ Richard Herz
          Richard Herz
          EARTHRIGHTS INTERNATIONAL
          Counsel for *Amici Curiae*